Andrew Rozynski, Esq. (NY# 5054465; *pro hac vice*)
EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)
arozynski@eandblaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---

| | |
|---|---|
| BRET BAILEY, | 3:24-cv-00188-CRB |
| Plaintiff, | **AMENDED COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MOUNT DIABLO UNIFIED SCHOOL DISTRICT | |
| Defendant. | |

---

Plaintiff Bret Bailey states his Amended Complaint against Defendant Mount Diablo Unified School District (the "District"), which currently operates Concord High School, based on personal knowledge and belief:

## INTRODUCTION

1. This case is all about access—equal access to employment opportunities. Bret Bailey is deaf, and his primary language is American Sign Language, or "ASL," for short. He requires an ASL interpreter to communicate effectively in many face-to-face workplace interactions.

2. Bailey taught ASL at Concord High School from September 1, 2021, to June 30, 2022.

3. While at Concord High School, Bailey repeatedly requested a designated ASL interpreter to accommodate his disability. This request was not fulfilled. Thus, the District did not accommodate his disability in violation of state and federal anti-discrimination laws.

4. Based on Bailey's experience, the District has not implemented effective policies, procedures, and practices respecting the civil rights and communication needs of deaf individuals.

5. Bailey brings this lawsuit to compel the District to cease its unlawful discriminatory workplace practices and put policies and procedures into practice to make sure deaf and hard-of-hearing people are free from discrimination.

6. Bailey seeks compensatory damages; declaratory, injunctive, and equitable relief; and attorney's fees and costs to redress the District's unlawful discrimination against him based on his disability in violation of Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794 and state law claims.

## PARTIES

7. Plaintiff Bret Bailey is a resident of Rio Vista, California, who is substantially

limited in the major life activities of hearing and speaking. Thus, he has a "disability" within the meaning of state and federal civil rights laws.

8. Defendant Mount Diablo Unified School District is a public school district duly organized and existing under Chapter 1 of Division 3 of Title 2 of the Education Code of the State of California and is a political subdivision of the State of California.

9. Defendant, Mount Diablo Unified School District is a public school district in Contra Costa County, California. It runs twenty-nine elementary schools, nine middle schools, and five high schools, with seven alternative school programs and an adult education program. Mount Diablo Unified School District is one of the largest school districts in California, with over 56 school sites and a budget of about $270,000,000. The district has over 36,000 K-12 students, over 20,000 adult education students, and over 3,500 employees, including over 2,000 certificated educators.

10. At all times relevant to this complaint, the District received state financial assistance.

11. At all times relevant to this complaint, per their publicly available fiscal budgets, the District received millions of dollars of federal financial assistance, subjecting them to the requirements of the Rehabilitation Act.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over the Plaintiff's federal-law claims because this action arises under federal law. 28 U.S.C. §§ 1331 & 1343.

13. This Court has supplemental jurisdiction over Plaintiff's state-law claim because they form part of the same case or controversy as Plaintiff's federal-law claims. 28 U.S.C. § 1367.

14. This Court has personal jurisdiction over Defendant because it is subject to the jurisdiction of the Northern District of California. Plaintiff's claims arise out of Defendant's conduct of business in the Northern District of California. Fed. R. Civ. P. 4(k)(1).

15. Venue lies in this District because Concord High School, which Defendant operates, resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in the Northern District of California. 28 U.S.C. § 1391(b).

## CONDITION PRECEDENT

16. The plaintiff also filed a timely charge of discrimination with the Department of Fair Employment & Housing, which issued a Right to Sue Notice on January 11, 2023.

17. The original Complaint was filed within one year of the Department's Right to Sue Notice.

18. Thus, Plaintiff has satisfied all conditions precedent to the filing of this Complaint.

## FACTUAL ALLEGATIONS

19. Bret Bailey is a profoundly deaf individual who primarily communicates in American Sign Language ("ASL").

20. On September 1, 2021, Bailey was hired by the District to teach ASL at Concord High School.

21. Plaintiff Bret Bailey's position as an ASL teacher at Concord High School included essential functions that required the accommodation of a full-time ASL interpreter to perform effectively.

22. The essential functions of Bailey's job include creating and delivering ASL lesson plans, evaluating students' ASL proficiency, communicating with students during class time, managing classroom behavior, providing individualized instruction and feedback to students, conducting parent-teacher conferences, communicating lesson plans to substitute teachers, collaborating with other teachers on curriculum development, participating in faculty meetings and professional development opportunities, and preparing and grading assignments.

23. In order to perform these essential functions effectively, Bailey requires an ASL interpreter.

24. An ASL interpreter must be present to facilitate effective communication with students, staff, and parents.

25. An ASL interpreter was necessary for Bailey to effectively deliver lesson plans to hearing students who were not yet fluent in ASL. The interpreter could voice Bailey's ASL instructions, ensuring all students fully understood complex language concepts and lesson objectives.

26. Effective communication is necessary to ensure students fully understand instructions, lesson plans, and assignments to fully benefit from Bailey's instruction and guidance.

27. Bailey required an interpreter to fully and accurately convey his feedback in real-time to hearing students during evaluations of their ASL proficiency and progress.

28. One-on-one interactions with students for individualized instruction often required rapid, nuanced communication, for which an interpreter was crucial, particularly with students who were not yet proficient in ASL.

29. Similarly, Bailey needed an ASL interpreter to conduct effective parent-teacher conferences, as most parents were not fluent in ASL, and clear, accurate communication about student performance, concerns, and progress was essential.

30. Teachers regularly collaborate on school activities, programming, and administrative tasks. Bailey also requires an ASL interpreter to fulfill these components of his job.

31. Bailey required an interpreter to fully participate in curriculum planning meetings with other teachers, ensuring his expertise in ASL instruction was effectively incorporated into the school's language program.

32. An interpreter was crucial for Bailey to participate equally in faculty meetings and professional development sessions, which typically involve rapid, multi-person discussions allowing him to contribute his ideas and benefit from the professional development content.

33. Effective classroom management often requires quick responses to student behavior, and an interpreter was necessary for Bailey to address behavioral issues promptly and clearly, ensuring all students understood expectations and consequences.

34. While Bailey could independently prepare written materials, he needed an interpreter when explaining assignment instructions or providing verbal feedback on projects, ensuring students fully understood expectations and areas for improvement.

35. The part-time interpreter provided by MDUSD was insufficient to meet Bailey's needs, as it only covered one of his five daily classes, leaving him without necessary communication support for the majority of his workday.

36. MDUSD's failure to provide a full-time interpreter significantly hindered Bailey's effectiveness as a teacher and his ability to fully participate in all aspects of his job.

37. With the accommodation of a full-time ASL interpreter, Bailey was fully qualified and capable of performing all essential functions of his position as an ASL teacher at Concord High School.

38. MDUSD was aware of Bailey's need for a full-time interpreter from the beginning of his employment, as evidenced by his request within the first week of starting his position.

39. Despite Bailey's requests and MDUSD's awareness of his needs, the school district failed to provide the necessary accommodation of a full-time interpreter for over four months.

40. MDUSD's delay in providing adequate accommodation and ultimate failure to provide a full-time interpreter constituted a failure to engage in a good faith interactive process as required by law.

41. The lack of a full-time interpreter forced Bailey to rely on improvised and inadequate communication methods, compromising his ability to perform his job duties and causing him significant stress and anxiety.

42. In the first week of September 2021, Bailey requested an ASL interpreter for his job, which was denied by HR, citing alleged budget constraints.

43. Bailey's personnel file at the school contained an audiogram, indicating that the school was aware of his deafness before his employment.

44. The COVID-19 pandemic's requirement for students to wear masks significantly hindered Bailey's ability to lip-read, exacerbating communication challenges.

45. Bailey experienced severe emotional distress due to the lack of support and accommodation for his disability.

46. Bailey's request for an interpreter was repeatedly ignored or mishandled by HR, including an incident where he was directed to a non-existent email attachment.

47. Finally, in January 2022, Bailey was informed by HR they recognized his disability and would discuss accommodations; however, the process was delayed and ineffective.

48. Bailey's need for ASL communication was emphasized during accommodation meetings, but the meetings were unproductive and ended abruptly because the Defendant's staff was unwilling to provide such accommodations.

49. The school district later stated that providing interpreters for 504 students took precedence over Bailey's need for an interpreter.

50. In March 2022, Bailey was informed of his non-reelection for the next school year and was pressured to resign.

51. Baileys pressure to resign was directly due to unwillingness for the Defendant to provide ASL interpreters and their alleged "lack of funding" to provide such accommodations to Bailey.

52. Based on information and belief, Defendant could afford to pay for a full-time interpreter for Bailey due to the hundreds of millions of dollars of resources it has access to but chose not to.

53. The school claimed it did provide interpreters but instead asked him to rely on Deaf students' ASL interpreters for very limited time to provide access, an inappropriate workaround that did not allow him to perform the essential functions of his job with reasonable accommodation.

54. This accommodation was a disservice to both Bailey and the Deaf student. Without each having an interpreter, neither has equal communication access. If, for example, Bailey wants to assign group work to his students, the interpreter must stay with the student to interpret the group conversation, leaving Bailey without an interpreter to facilitate his feedback and conversation with other students. Requiring Bailey to rely on the students' interpreters prevents each student from having consistent, reliable communication access and thus denies them equal access.

55. During the school year, Bailey lacked adequate interpreter support for his classes. He only had access to an interpreter, shared with another Deaf student, for one hour during a class that lasted one hour and fifty minutes. This limited support was provided in just one of his five classes, significantly hindering his ability to have equal access and reasonable accommodation.

56. With only part-time communication support, Bailey could not communicate effectively with students, parents, and other staff outside the interpreter's limited hours. Accordingly, this deprived him of meaningful and/or equal access to the services, programs, and benefits of his employment because he could only effectively communicate for one hour each day.

57. Bailey received a "right to sue" letter from the Fair Housing Act on January 11, 2023.

58. The District's civil rights violations are inherently distressful.

59. Throughout his employment, Bailey was distressed by the mistreatment and deliberate indifference he received from the District in regard to his advocacy for equal access in the workplace.

*Bailey v. Mount Diablo Unified School District – AMENDED COMPLAINT*

60. The District knew or should have known of its obligations as a covered entity under state and federal anti-discrimination laws to develop policies to promote compliance with these statutes and to provide reasonable accommodations or auxiliary aids and services.

61. The District knew or should have known that its actions and inactions created an unreasonable risk of causing Bailey greater levels of fear, anxiety, indignity, humiliation, and emotional distress than a hearing person would be expected to experience.

62. Still, whether through deliberate design or apathetic attitudes, the District prevented Bailey from receiving equal participation in the workplace by failing to provide the reasonable accommodations or auxiliary aids and services necessary for him.

63. In doing so, the District intentionally discriminated against Bailey, acting deliberately indifferent to his federally protected rights.

64. The District's wrongful and intentional discrimination against Bailey based on disability is reflected by the District's failure to train employees and issue policies of non-discrimination against deaf and hard-of-hearing individuals.

65. Upon information and belief, the District has failed to implement employee training or policies specific to accommodating deaf and hard-of-hearing staff.

66. Bailey has the right to equal access to services offered by Defendant as enjoyed by non-disabled people.

67. The District's willful, knowing, and repeated acts of intentional discrimination against Bailey evince a pattern and practice of discrimination that violated state and federal anti-discrimination laws that caused him to suffer humiliation, anxiety, and other emotional distress.

## CAUSES OF ACTION

### CLAIM I:  Violations of Section 504 of the Rehabilitation Act

68. Plaintiff re-alleges and incorporates every allegation in this Complaint.

69. At all times relevant to this action, Section 504 of the Rehabilitation, 29

U.S.C. § 794, has been in full force and effect and has applied to Defendant's conduct.

70. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking and has been an individual with a disability within the meaning of the RA. 29 U.S.C. § 705(9); 42 U.S.C. § 12102(2).

71. At all times relevant to this action, Defendant has been a program or activity receiving federal financial assistance under 29 U.S.C. § 794(b).

72. The RA states that no "otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

73. Defendant discriminated against Plaintiff solely on the basis of his disability by denying him meaningful access to the services, programs, and benefits Defendant offers to other individuals and by refusing to provide reasonable accommodations or auxiliary aids and services necessary to ensure effective communication in violation of the RA.

74. Plaintiff also advocated for his rights to equal access in the form of a sign language interpreter and was retaliated against and forced to resign because of Plaintiff's advocacy for his protected rights.

75. Additionally, Defendant has not implemented policies, procedures, and staff training necessary to ensure compliance with the RA and its implementing regulations.

76. Plaintiff has the right to injunctive relief, attorney's fees, costs, disbursements, and compensatory damages for the injuries and loss he sustained due to Defendant's discriminatory conduct and deliberate indifference under 29 U.S.C. § 794a.

77. The plaintiff has the right to all remedies available for violations of the RA.

**CLAIM II:  FAILURE TO PREVENT DISCRIMINATION IN VIOLATION OF GOVERNMENT CODE § 12940(k)**

78. Plaintiff restates and incorporates every allegation of the foregoing paragraphs as though fully set forth herein.

79. Defendants regularly employ five (5) or more persons. Thus, Defendant is an "employer" as that term is defined in Cal. Gov't. Code § 12926(d) and is subject to the FEHA.

80. Plaintiff was an "employee" of Defendants as defined in Cal. Code Regs. tit. 2, § 11008(b). Thus, Plaintiff is protected by the FEHA.

81. At all times relevant to this Complaint, Government Code § 12940(k) was in effect and applicable to Defendant. This code section prohibits employers from failing to take all reasonable steps to prevent discrimination.

82. Plaintiff informed Defendant on multiple occasions of his disability of deafness and the need for reasonable accommodation, including multiple requests for a designated sign language interpreter to accommodate his disability. Despite being aware of Plaintiff's disability and communication needs, Defendant did not provide this necessary accommodation.

83. Because of Defendant's actions, Plaintiff was subjected to discrimination because of his disability, including lack of reasonable accommodation for his deafness in the form of sign language interpreter services and, ultimately, a non-reelection for the following school year because of Defendant's unwillingness to pay for sign language interpreter services.

84. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer pain and suffering, emotional distress, and a loss of earnings and other employment benefits. The plaintiff has the right to general and compensatory damages in amounts to be proven during trial. The plaintiff has incurred and continues to incur costs and attorneys' fees and has the right to an award of his reasonable attorneys' fees and costs under Cal. Gov't. Code § 12965(b).

**CLAIM III: FAILURE TO ACCOMMODATE A KNOWN DISABILITY IN VIOLATION OF GOVERNMENT CODE § 12940(m)**

85. Plaintiff restates and incorporates each and every allegation of the foregoing

-11-

*Bailey v. Mount Diablo Unified School District – AMENDED COMPLAINT*

paragraphs as though fully set forth herein.

86. Defendant regularly employs five (5) or more persons. Thus, Defendant is an "employer" as that term is defined in Cal. Gov't. Code § 12926(d) and are subject to the FEHA.

87. Plaintiff was an "employee" of Defendants as defined in Cal. Code Regs. tit. 2, § 11008(b). Thus, Plaintiff is protected by the FEHA.

88. At all times relevant to this Complaint, Government Code § 12940(m) was in effect and applicable to Defendants. This code section prohibits employers from failing to make a reasonable accommodation for an employee's known disability.

89. Defendant was aware of Plaintiff's disability from the outset of his employment, as shown by the audiogram in his personnel file and his requests for a sign language interpreter and other accommodations.

90. Despite this knowledge, Defendant did not give Plaintiff reasonable accommodations, such as a designated ASL interpreter, necessary to perform his duties effectively.

91. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer pain and suffering, emotional distress, and a loss of earnings and other employment benefits. Plaintiff thereby has the right to general and compensatory damages in amounts to be proven at the time of trial. Plaintiff has incurred and continues to incur costs and attorneys' fees and has the right to an award of his reasonable attorneys' fees and costs under Cal. Gov't. Code § 12965(b).

### CLAIM IV- FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF GOVERNMENT CODE § 12940(n)

92. Plaintiff restates and incorporates each and every allegation of the foregoing paragraphs as though fully set forth herein.

93. Defendant regularly employs five (5) or more persons. Thus, Defendant is an

"employer" as that term is defined in Cal. Gov't. Code § 12926(d) and are subject to the FEHA.

94. Plaintiff was an "employee" of Defendants as defined in Cal. Code Regs. tit. 2, § 11008(b). Thus, Plaintiff is protected by the FEHA.

95. At all times relevant to this Complaint, Government Code § 12940(n) was in effect and applicable to Defendants. This code section requires employers to engage in good faith with employees to develop reasonable accommodations for a known disability.

96. Despite Plaintiff's repeated requests for an ASL Interpreter for his disability, Defendants failed to engage in a good faith interactive process to determine and provide appropriate accommodations for Plaintiff's disability.

97. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer pain and suffering, emotional distress, and a loss of earnings and other employment benefits. Plaintiff thereby has the right to general and compensatory damages in amounts to be proven at the time of trial. Plaintiff has incurred and continues to incur costs and attorneys' fees and has the right to an award of his reasonable attorneys' fees and costs under Cal. Gov't. Code § 12965(b).

## **PRAYER FOR RELIEF**

Plaintiff Bret Bailey requests the following relief for the violations set forth in this Complaint:

a. A declaratory judgment that Defendant's disability-accommodation policies are unlawful;

b. A declaratory judgment that Defendant violated Titles I and V of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

c. A permanent injunction forbidding Defendant from engaging in the unlawful practices described in this Complaint;

d. Compensatory damages;

e. Nominal Damages

*Bailey v. Mount Diablo Unified School District – AMENDED COMPLAINT*

f. Imposing penalties available under applicable laws;

g. Litigation costs and expenses, including reasonable attorney's fees;

h. Interest on all amounts at the highest rates and from the earliest dates allowed by law; and

i. Any other relief that the Court deems just and proper.

Dated: August 17, 2024                    Respectfully submitted,

/s/ Andrew Rozynski

Andrew Rozynski (admitted *pro hac vice*)
EISENBERG & BAUM, LLP
24 Union Square East, PH
New York, NY 10003
Tel: (212) 353-8700
Fax: (212) 353-1708

*Attorneys for Plaintiff Bret Bailey*